# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-017

Filing Date: January 20, 2021

No. A-1-CA-38649

**J. SCOTT CHANDLER,**

Plaintiff-Appellee,

v.

**ADVANCE NEW MEXICO NOW
PAC and JAY MCCLESKEY,**

Defendants-Appellants,

and

**JOHN DOE(S) and JANE DOE(S),**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY
Jennifer E. DeLaney, District Judge**

Certiorari Denied, April 7, 2021, No. S-1-SC-38689.  Released for Publication June 29, 2021.

Domenici Law Firm, P.C.
Pete V. Domenici
Lorraine Hollingsworth
Albuquerque, NM

for Appellee

Kennedy, Hernandez & Associates, P.C.
Paul J. Kennedy
Jessica M. Hernandez
Albuquerque, NM

for Appellants

**OPINION**

**VARGAS, Judge.**

**{1}** Defendants Advance New Mexico Now PAC and Jay McCleskey appeal the district court's order denying their special motion to dismiss Plaintiff J. Scott Chandler's complaint under New Mexico's statute prohibiting strategic litigation against public participation (Anti-SLAPP statute), NMSA 1978, § 38-2-9.1 (2001). Concluding the Anti-SLAPP statute does not protect the conduct or speech at issue in the case at bar, we dismiss Defendants' appeal as premature.

## BACKGROUND

**{2}** During a primary election in which Plaintiff was running for a New Mexico House of Representatives seat, Defendants published and distributed two mailers discussing child abuse that allegedly occurred on the youth ranch operated by Plaintiff. One side of the first mailer depicted a police siren and crime scene tape and contained a message that read, "How did a business accused of *child abuse and torture* AVOID government oversight?" On the reverse side was a message that read, "[Plaintiff] lobbied liberal legislators to avoid state oversight of his ranch." The reverse side continued to describe circumstances in which children were abused at the youth ranch, and stated that Plaintiff avoided oversight by "lobb[ying] to defeat two bills that would have required state licensing and put his ranch under the oversight of the state Children, Youth and Families [D]epartment."

**{3}** The second mailer contained a detailed description of the circumstances surrounding the abuse at the youth ranch and provided a quote from the Today Show: "They were threatened that they would be castrated if they didn't complete all the work." The mailer noted that "[p]arents [were] suing [Plaintiff] for abusing children on his ranch."

**{4}** Plaintiff sued Defendants for defamation, declaratory relief, and punitive damages and Defendants filed a special motion to dismiss Plaintiff's defamation claims under the Anti-SLAPP statute, arguing the statute protects conduct or speech made during political campaigns.

**{5}** The district court denied Defendants' special motion, ruling the statements at issue could qualify as defamatory and that the claims arising from those statements should therefore not be dismissed. Defendants filed an interlocutory appeal from the district court's decision, asking that we reverse the order of the district court and dismiss Plaintiff's entire complaint, including Plaintiff's declaratory judgment and punitive damages claims, because they are all based on statements that are not defamatory as a matter of law. *See* § 38-2-9.1(C) (authorizing an expedited appeal from a special motion); *Cordova v. Cline*, 2017-NMSC-020, ¶ 17, 396 P.3d 159 (concluding the Anti-SLAPP statute provides a right to an interlocutory appeal).

## DISCUSSION

**{6}** On appeal, Defendants contend that the district court erred when it concluded that the statements set out in its campaign mailers could qualify as defamatory.

However, before we reach the merits of Defendants' appeal, we must determine whether those statements fall within the procedural protections of the Anti-SLAPP statute granting "[a]ny party . . . the right to an expedited appeal from a trial court order on [a] special motion[.]"[1] Section 38-2-9.1(C); *see also Ferebee v. Hume*, 2021-NMCA-012, ¶¶ 13-15, 485 P.3d 778 (holding that this Court has jurisdiction under the Anti-SLAPP statute to consider whether a party was entitled to the statute's protections). Because we conclude that Defendants' statements were not made "in connection with" a public hearing or public meeting, we hold that Defendants are not entitled to an interlocutory review of the district court's order denying its motion to dismiss. We explain.

**Defendants' Conduct or Speech Is Not of the Kind Entitled to the Procedural Protections of the Anti-SLAPP Statute**

**{7}**     The Anti-SLAPP statute provides certain procedural protections to persons who engage in conduct or speech made in connection with specified public hearings or public meetings, stating in relevant part:

> Any action seeking money damages against a person for conduct or speech undertaken or made in connection with a public hearing or public meeting in a quasi-judicial proceeding before a tribunal or decision-making body of any political subdivision of the state is subject to a special motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment that shall be considered by the court on a priority or expedited basis[.]

Section 38-2-9.1(A).

**{8}**     Defendants contend they are entitled to an expedited review of the district court's denial of their special motion to dismiss because the statements set out in the mailers were "undertaken or made *in connection with* . . . public hearing[s] or public meeting[s] in a quasi-judicial proceeding." *Id.* (emphasis added). Specifically, Defendants identify three types of public hearings or public meetings they contend their mailers were prepared and sent "in connection with." First, they contend that the mailers were sent in connection with the political election in which Plaintiff was participating. "Elections," Defendants argue, "necessarily entail public hearings and meetings convened by tribunals and decision-making bodies such as state and county canvassing boards and precinct boards." Defendants next claim that their mailers were made in connection with prior litigation related to allegations of abuse of teenagers at the youth ranch, including litigation that the Children, Youth & Families Department negligently licensed and regulated the youth ranch, as well as litigation brought by parents of youth ranch residents. Defendants also claim that the mailers were made in connection with bills

---

1We note that although the district court based its denial of Defendants' special motion to dismiss on whether the defamation claim passed muster under the standard for motions to dismiss, the parties raised Defendants' entitlement to protection under the Anti-SLAPP statute both before the district court and on appeal and we therefore address it before considering the merits of Defendants' appeal.

introduced in the New Mexico Legislature in the two sessions preceding the mailers, arguing that "anyone with an interest in . . . greater oversight of outdoor youth programs or residential placements through new legislation would have reason to connect their campaign speech to this issue during the 2016 elections for state legislative offices . . . [to] improve efforts to enact such legislation in future legislative sessions."

**{9}** In support of their claim that they are entitled to an expedited review under the Anti-SLAPP statute, Defendants point us to our Supreme Court's decision in *Cordova*, arguing that *Cordova* requires that we apply the Anti-SLAPP statute broadly enough to include the conduct or speech set out in the mailers. In *Cordova*, parents of children enrolled in the Taos Municipal School District, working as an unincorporated association, sought to recall a school board member, pursuant to the Local School Board Member Recall Act, (the Recall Act).[2] *Cordova*, 2017-NMSC-020, ¶ 3. In accordance with the Recall Act, the association collected signatures and submitted a petition to the Taos County Clerk, who then filed an application with the district court requesting a sufficiency hearing as required by Section 22-7-9.1(A) (providing that "the county clerk shall file an application with the district court . . . requesting a hearing for a determination by the court of whether sufficient facts exist to allow the petitioner to continue with the recall process"). *Cordova*, 2017-NMSC-020, ¶ 4. Our Supreme Court, considering whether members of the association were entitled to the protections of the Anti-SLAPP statute in response to the school board member's malicious abuse of process suit, evaluated whether the association's activities constituted "conduct or speech undertaken or made *in connection with* a public hearing . . . before a tribunal[.]" *Cordova*, 2017-NMSC-020, ¶ 19; Section 38-2-9.1(A) (emphasis added). Our Supreme Court held that "all activities related to the" sufficiency hearing, i.e., "the collection of petitions, filing with the county clerk, the county clerk's responsibilities, etc.[,]" were activities by which the defendants exercised their right to petition, namely "the right to engage in the recall process[.]" *Cordova*, 2017-NMSC-020, ¶¶ 21-22. Accordingly, notwithstanding that many of the activities at issue took place prior to and in anticipation of the sufficiency hearing and that the sufficiency hearing never took place because the association voluntarily dismissed its recall petition, the defendants' participation in the recall proceedings was protected under the Anti-SLAPP statute, as it was related to the sufficiency hearing. *Id.* ¶¶ 5, 23. "[T]he phrase 'in connection with,' " our Supreme Court held, "reveals the Legislature's intent to protect all activities related to the public hearing before a tribunal[.]" *Id.* ¶ 21. Any other conclusion, our Supreme Court reasoned, is "contrary to the Legislature's broad intent to protect citizens exercising their right to petition" from suits filed in retaliation for those petitioning activities. *Id.* ¶ 22.

**{10}** While *Cordova* provides us with some general guidance regarding the meaning of "in connection with," it does not answer the question presented by Defendants' appeal. In *Cordova*, the conduct of the association members was undertaken to initiate, and was directly related to, a specific public hearing (i.e. the sufficiency hearing) in which the parents intended to participate. Here, Defendants do not argue that their

---

[2]At the time the *Cordova* opinion was filed, the Recall Act, was in effect, pursuant to NMSA 1978, §§ 22-7-1 to -16 (1977, as amended through 2018), which was later repealed and recompiled at NMSA 1978, §§ 1-25-1 to -13 (2019).

conduct or speech was undertaken or made during their participation in any specific hearings or meetings. Instead, Defendants point to several types of hearings, including hearings that were concluded before the mailer was sent, as well as hearings that would necessarily take place in association with the election and hearings that might take place in the future if certain legislation was again proposed. Defendants explained at oral argument that their conduct or speech could be construed as engaging in those processes during which public hearings or public meetings would necessarily occur, including canvassing boards during elections, as well as past and possible future deliberation on bills that have the potential to impact operations at the youth ranch, and in which Plaintiff might have been involved if he was successful in the election.

**{11}** To determine whether the conduct or speech in Defendants' mailer is of the type the Legislature intended to protect with the right to an expedited appeal when it passed the Anti-SLAPP statute, *see* § 38-2-9.1(A), (C), we consider whether Defendants' conduct or speech was "in connection with" any of the proceedings they identify for purposes of our Anti-SLAPP statute. Insofar as resolution of the matter rests on our interpretation of the Anti-SLAPP statute, "[w]e review the interpretation of statutory language de novo." *Cordova*, 2017-NMSC-020, ¶ 11. Discerning the meaning of "in connection with" for purposes of our Anti-SLAPP statute is a matter of statutory construction, in which "[o]ur primary goal is to ascertain and give effect to the intent of the Legislature." *State v. Off. of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 13, 285 P.3d 622 (internal quotation marks and citation omitted). "In doing so, we examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *Id.* (internal quotation marks and citation omitted).

**{12}** Turning first to the plain language of the statute, we note that the Legislature did not specify circumstances in which it considered conduct or speech to be "in connection with" a public hearing or meeting, though our Supreme Court has clarified that "a narrow interpretation of the language of the Anti-SLAPP statute is contrary to the Legislature's broad intent to protect citizens exercising their right to petition" and conduct "related to" the public hearing or public meeting is protected. *Cordova*, 2017-NMSC-020, ¶¶ 21, 22. Keeping these guidelines in mind, we give the words "in connection with" their ordinary meaning. *See Chatterjee v. King*, 2012-NMSC-019, ¶ 11, 280 P.3d 283 (explaining that "we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended" (alteration, internal quotation marks, and citation omitted)). A "connection" is "the state of being connected or linked" and a "relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement)[.]" *Connection, Webster's Third New Int'l Dictionary* (unabr. ed. 2002). "Connected" means to be "joined or linked together[.]" *Id*. The plain language of the statute tells us that the conduct or speech at issue must be linked to or associated with "a public hearing or public meeting in a quasi-judicial proceeding" in order to be "in connection with" those proceedings. Section 38-2-9.1(A). These definitions comport with our Supreme Court's conclusion that "in connection with" includes "all activities related to" the public hearing or public meeting,

even if they do not occur in the hearings or meetings themselves. *Cordova*, 2017-NMSC-020, ¶ 21.

**{13}** This, however, does not end our inquiry. "[C]ourts must exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning. In such a case, it can rarely be said that the legislation is indeed free from all ambiguity and is crystal clear in its meaning." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. Thus, we also consider the statutory history, as well as the Legislature's object and purpose when it promulgated the statute. *See Muqqddin*, 2012-NMSC-029, ¶ 13. In this instance our Legislature makes clear that the procedural protections promulgated in the Anti-SLAPP statute were intended to protect the rights of citizens to petition and participate in "proceedings before local and state governmental tribunals." NMSA 1978, § 38-2-9.2 (2001), expressly states the "[f]indings and purpose" of the statute:

> The [L]egislature declares that it is the public policy of New Mexico to protect the rights of its citizens to participate in quasi-judicial proceedings before local and state governmental tribunals. Baseless civil lawsuits seeking or claiming millions of dollars have been filed against persons for exercising their right to petition and to participate in quasi-judicial proceedings before governmental tribunals. Such lawsuits can be an abuse of the legal process and can impose an undue financial burden on those having to respond to and defend such lawsuits and may chill and punish participation in public affairs and the institutions of democratic government. These lawsuits should be subject to prompt dismissal or judgment to prevent the abuse of the legal process and avoid the burden imposed by such baseless lawsuits.

*Id*.

**{14}** We also find guidance in case law from other states that have used similar language in their own Anti-SLAPP statutes. While several states limit the protections offered by their Anti-SLAPP statutes to certain conduct or speech made "in connection with" the government proceedings defined in those statutes, only a few have considered the meaning of that phrase.[3] The most comprehensive consideration was undertaken by the Supreme Judicial Court of Massachusetts, which held that "[t]o fall under the 'in

---

3*See, e.g.*, *Neville v. Chudacoff*, 73 Cal. Rptr. 3d 383, 389-90 (Ct. App. 2008) (noting that "[s]tatements that bear no relationship to or have nothing to do with the claims under consideration in the litigation" may have been in connection with a proceeding, but were not "in connection with an issue under consideration," as required by Cal. Civ. Proc. Code § 425.16(e)(2) (West 2015) (alteration, emphasis, internal quotation marks, and citation omitted)); *Ga. Cmty. Support & Sols., Inc. v. Berryhill*, 620 S.E.2d 178, 181 (Ga. Ct. App. 2005) (explaining that "the Anti-SLAPP statute does not encompass all statements that touch upon matters of public concern[,]" but requires that the statement "be made in relation to some official proceeding"); *Paul v. Friedman*, 117 Cal. Rptr. 2d 82, 93 (Ct. App. 2002) (requiring a pending proceeding and an issue before the tribunal).

connection with' definition of petitioning under the [A]nti-SLAPP statute, a communication must be made to influence, inform, or at the very least, reach governmental bodies—either directly or indirectly. The key requirement of this definition of petitioning is the establishment of a plausible nexus between the statement and the governmental proceeding." *Blanchard v. Steward Carney Hosp., Inc.*, 75 N.E.3d 21, 30 (Mass. 2017) (internal quotation marks and citations omitted). We find this interpretation persuasive for purposes of determining whether non-participatory conduct or speech is protected under our Anti-SLAPP statute. Indeed, this expansive definition comports with *Cordova*'s inclusion of activities that, although conducted outside the potential sufficiency hearing's proceedings, sought to initiate a process by which an elected official may have been recalled. *See Cordova*, 2017-NMSC-020, ¶ 22 (observing "the Legislature's broad intent to protect citizens exercising their right to petition . . . from SLAPP suits"). Having established guidelines to consider in evaluating whether conduct or speech is made "in connection with" a public hearing or public meeting, we consider whether Defendants are entitled to the procedural protections of the Anti-SLAPP statute.

**Defendants' Conduct or Speech Did Not Fall Within the Protection of the Anti-SLAPP Statute**

{15} Defendants argue the Anti-SLAPP statute applies to their conduct or speech because it "related to" several public hearings and public meetings: the public hearings and meetings involved in elections; the legal proceedings involved in several parents' lawsuits arising from the alleged child abuse on Plaintiff's youth ranch; and the public hearings involved in the Legislature's deliberation on several bills. Notwithstanding Defendants' reference to these public hearings and meetings, we conclude their conduct or speech does not fall within the Anti-SLAPP statute's protections because it was not engaged in for the purpose of petitioning or participating in proceedings before a local or state governmental tribunal.

{16} Taking into account the plain language of the Anti-SLAPP statute, its purpose, and guidance from other states, we discern no link or association, even when interpreted broadly, between the mailers and the public hearings or public meetings Defendants point to. *See* § 38-2-9.1(A) (requiring that conduct or speech be made "in connection with a public hearing or public meeting"). We see no indication that Defendants' conduct or speech was intended to influence, inform, or reach any of the election boards identified in the statutes they cited in support of their claim that the mailers were made in connection with the 2016 election in which Plaintiff was a candidate. *See Blanchard*, 75 N.E.3d at 30. Defendant's brief cites to NMSA 1978, Section 1-2-6(A) (2019) (requiring the county clerk to appoint election boards); NMSA 1978, Section 1-8-5 (1969) (requiring canvassing board to certify nominees by each party to the county clerk); NMSA 1978, Section 1-12-2 (1999) (directing when precinct boards shall present themselves at polling places); NMSA 1978, Section 1-13-13 (2019) (setting out duties of a canvassing board to approve the report of the canvass of returns and declare results); NMSA 1978, Section 1-13-15 (2019) (setting out the duties of the canvassing board to approve canvass in statewide elections and votes on constitutional

amendments and declare results), to support its claim that their mailers were made "in connection with a public hearing or public meeting[.]" Section 38-2-9.1(A). Defendants do not explain how their mailers have any bearing on the activities of the election boards. We find no nexus between the statements made in the mailers and the matters subject to review by the election boards. *See Blanchard*, 75 N.E.3d at 30.

**{17}** With regard to Defendants' claim that the mailers were made in connection with the litigation they mention, nothing in those statements can be construed as being "made to influence, inform, or at the very least, reach governmental bodies," *id*., so as to be considered "in connection with a public meeting or public hearing," as the mailers do nothing more than inform that some parents had sued Plaintiff for the alleged abuse. Furthermore, as Defendants concede, some of Defendants' statements set out in the mailers "relate to the subject of prior litigation," which had apparently been concluded at the time the mailers were sent and could therefore not be intended to inform those proceedings.

**{18}** Finally, Defendants contend that their statements in the mailers relate to "bills introduced in New Mexico's Legislature . . . as well as the broader issue of government oversight at Plaintiff's ranch" and point us to bills introduced in the 2014 and 2015 regular sessions, including one that would have added certain residential placements for children to the definitions of the Public Health Act, NMSA 1978, Section 24-1-1 to -41 (1973, as amended through 2019), and another that would have required licensure of outdoor youth programs. While Defendants' mailer alleged that Plaintiff lobbied to defeat two bills that would have required state licensing and imposed oversight by the Children, Youth and Families Department at the youth ranch, they were not made to influence or inform those already-completed legislative proceedings. Nor do they appear to be in anticipation of the possibility that the Legislature would consider the bills in the future, such that we can discern an intent to influence, inform, or reach the Legislature.

**{19}** In their motion to dismiss and on appeal, Defendants characterized their conduct or speech not as petitioning, made for the purpose of directly or indirectly influencing, informing, or reaching governmental bodies, *see Blanchard*, 75 N.E.3d at 30, but as an exercise of constitutionally protected free speech. Indeed, the cases cited in Defendants' motion and brief in chief to support the proposition that Anti-SLAPP statutes have been extended to protect statements made during political campaigns were decided in the context of state statutes that expressly protect acts in furtherance of a person's right of free speech in addition to the right to petition. *See* Cal. Civ. Proc. Code § 425.16(b)(1) (protecting against actions "arising from any act of that person in furtherance of the person's right of *petition or free speech* . . . in connection with a public issue" (emphasis added)); La. Code Civ. Proc. Ann. art. 971(A)(1) (2012) (protecting against actions "arising from any act of that person in furtherance of the person's right of *petition or free speech* . . . in connection with a public issue" (emphasis added)); Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)-(4) (West 2019) (protecting against actions based on or in response to a person's "exercise of the *right of free speech. . ., right to petition. . .,* or right of association" (emphasis added)); *see also Conroy v. Spitzer*, 83 Cal. Rptr. 2d 443, 446, (Ct. App. 1999) (concluding California's

Anti-SLAPP statute applied to the defendant's statements made during a political campaign because they were made in furtherance of his right of free speech in connection with a public issue); *Lamz v. Wells*, 938 So. 2d 792, 797 (La. Ct. App. 2006) (concluding Louisiana's Anti-SLAPP statute applied to the defendant's conduct of distributing campaign literature because it was an act in furtherance of his right of free speech in connection with a public issue); *Cruz v. Van Sickle*, 452 S.W.3d 503, 515 (Tex. App. 2014) ("Because the statements concerned [the appellant's] personal character and fitness for judicial office, they were a matter of public concern and thus related to appellees' freedom of speech.").[4] New Mexico's Anti-SLAPP statute does not expressly apply to the exercise of free speech and we decline to add such language into the statute. *See Lewis v. Albuquerque Pub. Schs.*, 2019-NMSC-022, ¶ 39, 453 P.3d 445 (explaining that we "will not add words except where necessary to make the statute conform to the obvious intent of the [L]egislature" (internal quotation marks and citation omitted)); *see also* § 38-2-9.2 (providing the purpose of the Anti-SLAPP statute); *Cordova*, 2017-NMSC-020, ¶ 19 (explaining that the purpose of the Anti-SLAPP statute is to protect citizens in exercising their right to petition and to participate in quasi-judicial proceedings and public hearings).

**{20}** We therefore conclude Defendants' conduct or speech was not "undertaken or made in connection with a public hearing or public meeting[.]" Section 38-2-9.1(A). As Defendants' conduct or speech does not fall within the protections of the Anti-SLAPP statute, we do not have jurisdiction to address the district court's ruling concerning the legal sufficiency of Plaintiff's defamation or other claims at this time. *See Cordova*, 2017-NMSC-020, ¶ 15 (recognizing that "[t]he Legislature has authority to establish appellate jurisdiction and create a right of appeal"); *Ferebee*, 2021-NMCA-012, ¶ 28 (holding that where a party is not entitled to procedural protections of the Anti-SLAPP statute, interlocutory review is inappropriate and the appeal is premature).

**CONCLUSION**

**{21}** For the foregoing reasons, we dismiss Defendants' appeal of the district court's denial of its special motion to dismiss as premature, and remand to the district court for further proceedings.

**{22} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

---

4Defendants also cited several other cases to support this proposition. However, Defendants' reliance on these additional cases is misplaced as the courts did not discuss the applicability of an Anti-SLAPP statute. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (examining whether the complaint "plausibly allege[d]" the actual malice requirement for a defamation claim by a public figure); *Barnett v. Denver Pub. Co.*, 36 P.3d 145, 147-48 (Colo. App. 2001) (analyzing the dismissal of defamation claim under the "doctrine of substantial truth"); *Bertrand v. Mullin*, 846 N.W.2d 884, 901 (Iowa 2014) (reviewing whether there was sufficient evidence to establish actual malice); *Seaquist v. Caldier*, 438 P.3d 606, 615-16 (Wash. Ct. App. 2019) (considering the falsity requirements for defamation and false light claims).

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**