IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-012

Filing Date: January 6, 2021

No. A-1-CA-37202

CYNTHIA FEREBEE,

Plaintiff-Appellant,

v.

ROBERT T. HUME, RENATE C.
HUME, and HUME & ASSOCIATES,
LLC,

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Sarah C. Backus, District Judge**

Released for Publication May 11, 2021.

Bardacke Allison LLP
Benjamin W. Allison
Breanna Contreras
Santa Fe, NM

for Appellant

Keleher & McLeod, P.A.
Thomas C. Bird
Gary J. Van Luchene
Albuquerque, NM

for Appellees

OPINION

**VARGAS, Judge.**

**{1}** This case requires that we interpret the scope of our jurisdiction granted by New Mexico's statute prohibiting strategic litigation against public participation (Anti-SLAPP statute), NMSA 1978, § 38-2-9.1 (2001), as well as the applicability of the statute's protections to speech or conduct made in connection with federal proceedings. Plaintiff

Cynthia Ferebee appeals the district court's denial of her motion to dismiss counterclaims filed by Defendants Robert T. Hume (Defendant Robert), Renate C. Hume, and Hume & Associates, LLC (collectively, Defendants) under the Anti-SLAPP statute, as well as her request for Rule 1-011 NMRA sanctions against Defendants. In response, Defendants challenge this Court's jurisdiction to hear Plaintiff's appeal. We hold that we have jurisdiction over Plaintiff's appeal from the district court's order denying her motion to dismiss and that the district court did not err in denying the motion because the Anti-SLAPP statute does not protect participation in federal proceedings. Further, we decline to review the portion of the district court's order denying Plaintiff's request for sanctions. Accordingly, we affirm.

## BACKGROUND

**{2}** Plaintiff's appeal stems from an action filed by Plaintiff in district court against Defendants for malicious abuse of process and defamation, in which she alleged in relevant part, that Defendants filed meritless claims against her in retaliation for her submission of sworn declarations to the United States Department of Commerce. Plaintiff alleged that while she was employed at Hume & Associates, LLC, a firm that represents New Mexico garlic farmers and Chinese companies, she became concerned that Defendant Robert was not representing the best interests of his New Mexico clients. Plaintiff alleged that Defendant Robert failed to inform his New Mexico clients that their participation in a Department of Commerce administrative review of Harmoni International Spice, Inc. (Harmoni)—his Chinese clients' biggest competitor—was intended to help his Chinese clients in a trade war with Harmoni. Plaintiff further explained that she discovered Defendant Robert had misrepresented to the Department of Commerce that he was working pro bono for his New Mexico clients.

**{3}** After Plaintiff submitted declarations to the Department of Commerce, Defendants filed three claims against her in magistrate court. In these claims, Defendants alleged Plaintiff (1) improperly used the office credit card without authorization; (2) forged Defendant Robert's signature on checks; and (3) failed to repay a loan made by Defendant Robert to Plaintiff. As a result of Defendants' magistrate court claims, Plaintiff filed her malicious abuse of process and defamation claims in district court. Defendants dismissed their magistrate court claims and refiled them as counterclaims in response to Plaintiff's complaint. Three of Defendants' four counterclaims (the financial counterclaims) were identical to the magistrate court claims. The fourth counterclaim (the duty-of-loyalty counterclaim) newly alleged that Plaintiff had breached her duty of loyalty to her employer by using "her employer's confidential information and communications for purposes of her own adverse to the employer or for the purposes of a third-party adverse to the employer."

**{4}** Plaintiff filed a motion to dismiss (the special motion) these counterclaims under the Anti-SLAPP statute, arguing they were made in retaliation for her declarations to the Department of Commerce. Additionally, Plaintiff requested that the district court dismiss the counterclaims under Rule 1-011 as a sanction for the improper purpose and untrue statements underlying Defendants' claims.

**{5}**     The district court denied Plaintiff's special motion, concluding that the Anti-SLAPP statute was inapplicable because her "alleged speech was not directed to a state or local government but to a federal agency," and further concluding that "[b]ecause the counterclaims seek money damages relating to alleged financial improprieties while Plaintiff . . . was employed by Defendants[,] . . . the connection between the actions of the parties is tenuous." The district court also denied Plaintiff's motion for sanctions. Plaintiff now appeals the district court's decisions.

## DISCUSSION

**{6}**     The parties raise three issues on appeal: (1) whether this Court has jurisdiction to review Plaintiff's appeal of the district court's denial of her special motion, (2) whether the district court erred in denying Plaintiff's special motion, and (3) whether the district court erred in denying Plaintiff's motion for sanctions. We address each in turn.

### I.     Appellate Jurisdiction Over the District Court's Denial of Plaintiff's Special Motion

**{7}**     Defendants challenge this Court's jurisdiction to hear the present appeal, arguing Plaintiff's appeal "does not proceed from a final order" and "the Anti-SLAPP provision authorizing immediate appeal does not apply[.]" Defendant contends that because the district court concluded that Plaintiff's claims do not fall within the purview of the Anti-SLAPP statutes and Plaintiff's appeal is from a non-final order, she is not entitled to avail herself of the expedited appeal right provided by the statute. *See* § 38-2-9.1(C) (providing parties with a right to expedited appeal). "The question of jurisdiction is a controlling consideration that must be resolved before going further[.]" *State ex rel Bevacqua-Young v. Steele*, 2017-NMCA-081, ¶ 6, 406 P.3d 547 (internal quotation marks and citation omitted). "We review jurisdictional questions de novo." *Id*.

**{8}**     As Plaintiff points out, our Supreme Court interpreted the expedited appeal right provision as "allow[ing] any party to bring an interlocutory appeal from a trial court order on the special motion(s) brought pursuant to [the] Anti-SLAPP statute." *Cordova v. Cline*, 2017-NMSC-020, ¶ 12, 396 P.3d 159. And, while *Cordova* made clear that a final order was not necessary to invoke a party's right to appeal under the Anti-SLAPP statute, it did not specifically address a party's right to appeal from a ruling by the district court that the Anti-SLAPP statute did not protect the conduct or speech at issue before the district court.

**{9}**     Initially, we note that "[t]he appellate jurisdiction of both [the Supreme Court] and the [C]ourt of [A]ppeals is within the legislative power to prescribe." *Lovelace Med. Ctr. v. Mendez*, 1991-NMSC-002, ¶ 11, 111 N.M. 336, 805 P.2d 603; *see Cordova*, 2017-NMSC-020, ¶ 15 (recognizing that "[t]he Legislature has authority to establish jurisdiction and create a right of appeal"). Defendants' challenge to our jurisdiction requires that we interpret the Anti-SLAPP statute to determine whether the Legislature intended to grant a right to an expedited appeal of an order of the district court concluding a party is not entitled to the statute's protection. Statutory interpretation is an

issue of law we review de novo. *See Badilla v. Wal-Mart Stores E. Inc.*, 2015-NMSC-029, ¶ 12, 357 P.3d 936 ("Interpretation of a statute is an issue of law which we review de novo." (omissions, alteration, internal quotation marks, and citation omitted)).

**{10}** The relevant provisions of the Anti-SLAPP statute set out a party's rights to the expedited review of specific claims brought against that party for his or her conduct or speech in certain government proceedings, including the expedited right to appeal:

> A. Any action seeking money damages against a person for conduct or speech undertaken or made in connection with a public hearing or public meeting in a quasi-judicial proceeding before a tribunal or decision-making body of any political subdivision of the state is subject to a special motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment that shall be considered by the court on a priority or expedited basis to ensure the early consideration of the issues raised by the motion and to prevent the unnecessary expense of litigation.

> B. If the rights afforded by this section are raised as an affirmative defense and if a court grants a motion to dismiss, a motion for judgment on the pleadings or a motion for summary judgment filed within ninety days of the filing of the moving party's answer, the court shall award reasonable attorney fees and costs incurred by the moving party in defending the action. If the court finds that a special motion to dismiss or motion for summary judgment is frivolous or solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney fees to the party prevailing on the motion.

> C. *Any party shall have the right to an expedited appeal from a trial court order on the special motions described in Subsection B of this section* or from a trial court's failure to rule on the motion on an expedited basis.

Section 38-2-9.1(A)-(C) (emphasis added).

**{11}** When interpreting statutes, we must determine and give effect to the Legislature's intent, which requires that "we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Chatterjee v. King*, 2012-NMSC-019, ¶ 11, 280 P.3d 283 (alteration, internal quotation marks, and citation omitted). In addition to the language used, we "consider the statute's history and background." *Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 16, 326 P.3d 1120 (internal quotation marks and citation omitted). "[I]f the meaning of a statute is truly clear—not vague, uncertain, ambiguous, or otherwise doubtful—it is of course the responsibility of the judiciary to apply the statute as written and not to second-guess the [L]egislature's selection from among competing policies or adoption of one of perhaps several ways of effectuating a particular legislative

objective." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 22, 117 N.M. 346, 871 P.2d 1352.

**{12}**   The Anti-SLAPP statute permits *any party* to one of the special motions described in Section 38-2-9.1(B) to appeal from a *trial court order* on those motions. Section 38-2-9.1(C); *see also* § 38-2-9.1(B) (identifying the types of motions entitled to review). The plain language of Section 38-2-9.1(C) allowing for an expedited appeal does not distinguish between decisions on the merits of the claims raised in the special motion or decisions on the applicability of the Anti-SLAPP statute, suggesting that both types of decisions are entitled to an expedited appeal. Nonetheless, as Chief Justice Montgomery warned in *Helman*, "courts must exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning. In such a case, it can rarely be said that the legislation is indeed free from all ambiguity and is crystal clear in its meaning." 1994-NMSC-023, ¶ 23.

**{13}**   Here, the Anti-SLAPP statute's history and background are instructive and indicate that the Legislature did not intend to limit the right to an expedited appeal to those instances in which the district court's order ruled on the merits of a party's claims. NMSA 1978, § 38-2-9.2 (2001) sets out the Legislature's findings and purpose in enacting the Anti-SLAPP statute, explaining that:

> [I]t is the public policy of New Mexico to protect the rights of its citizens to participate in quasi-judicial proceedings before local and state governmental tribunals. Baseless civil lawsuits seeking or claiming millions of dollars have been filed against persons for exercising their right to petition and to participate in quasi-judicial proceedings before governmental tribunals. Such lawsuits can be an abuse of the legal process and can impose an undue financial burden on those having to respond to and defend such lawsuits and may chill and punish participation in public affairs and the institutions of democratic government. These lawsuits should be subject to prompt dismissal or judgment to prevent the abuse of the legal process and avoid the burden imposed by such baseless lawsuits.

**{14}**   As the Legislature makes clear, the Anti-SLAPP statute is intended to ensure that baseless lawsuits brought to chill persons from exercising the petition rights described therein, are promptly dismissed to prevent the abuse of the legal process and to protect persons exercising those rights from the burdens of such suits. We see no reason this policy would not extend to a party's right to review of the district court's decision regarding the applicability of the Anti-SLAPP statute. In the event a district court were to erroneously determine that the conduct or speech at issue was not subject to the protections of the Anti-SLAPP statute, the party invoking the statute's protections would be deprived of those protections, only to be vindicated after protracted and expensive litigation—the circumstances the Legislature sought to prevent. To accept Defendant's

interpretation of Section 38-9-2.1, we would have to read into that statute a limitation that the Legislature did not include in the text and overlook the purpose of the statute, itself.

**{15}** Here, the district court denied Plaintiff's special motion in which she asserted that Defendants' counterclaims sought damages for conduct or speech falling within the scope of the Anti-SLAPP statute. We conclude the nature and denial of Plaintiff's motion was sufficient to invoke the right to an expedited appeal, thereby providing this Court with jurisdiction over the matter. *See* § 38-2-9.1(C); *Cordova*, 2017-NMSC-020, ¶ 17 (concluding "that the Anti-SLAPP statute provides a right to an interlocutory appeal under the expedited appeal provision"). We now consider whether the district court erred in denying Plaintiff's special motion.

## II.     The District Court's Denial of Plaintiff's Special Motion

**{16}** Plaintiff argues the district court erred in denying her special motion because Defendants' claims directly targeted her speech, the Department of Commerce proceedings in which she participated are among the type protected by the Anti-SLAPP statutes, and she is entitled to the substantive protections provided by the *Noerr-Pennington* doctrine. *See Cordova*, 2017-NMSC-020, ¶ 24 (explaining that the *Noerr-Pennington* doctrine is the mechanism by which substantive First Amendment protections are provided and that it shields from retaliation "those who engage in conduct aimed at influencing government, including litigation, . . . provided their conduct is not a sham"). We conclude that the district court correctly held that Plaintiff's conduct or speech does not fall within the procedural protections of the Anti-SLAPP statute because it was not made "before a tribunal or decision-making body of [a] political subdivision of the state[.]" Section 38-2-9.1(A). Therefore, we decline to engage in the interlocutory review of the district court's denial of her motion to dismiss provided for in the Anti-SLAPP statute. *See* § 38-2-9.1(C) (providing for a right to an expedited interlocutory review).

**{17}** Section 38-2-9.1(A) provides procedural protections to "a person for conduct or speech undertaken or made in connection with a public hearing or public meeting in a quasi-judicial proceeding before a tribunal or decision-making body *of any political subdivision of the state*" in the form of a priority or expedited review of the special motions identified in Section 38-2-9.1(A) (emphasis added). Plaintiff contends that the district court erred in narrowly interpreting the Anti-SLAPP statute to apply only to conduct or speech directed at a state or local government body, excluding protections for speech or conduct made to federal agencies. In particular, Plaintiff argues that such a narrow reading defeats the legislative intent to protect participation not only before state or local government bodies, but in the democratic process as a whole. We disagree.

**{18}** Turning again to our canons of statutory construction, we look to the plain language and consider the history and background of Section 38-2-9.1 to determine the Legislature's intended scope of the statute. *See Valenzuela*, 2014-NMCA-061, ¶ 16. In

this instance, the Legislature explicitly requires that the conduct or speech at issue be made in connection with certain proceedings before "a political subdivision of the state." Section 38-2-9.1(A), (D). "[W]e must assume the [L]egislature chose its words advisedly to express its meaning unless the contrary intent clearly appears." *State v. Maestas*, 2007-NMSC-001, ¶ 22, 140 N.M. 836, 149 P.3d 933 (alterations, internal quotation marks, and citation omitted).

**{19}** In support of its argument that the Legislature did not intend to limit the procedural protections of the Anti-SLAPP statute to proceedings before "a political subdivision of the state[,]" Plaintiff directs our attention to the language in Section 38-2-9.1(A) referencing "public hearing[s]" and "public meeting[s] in a quasi-judicial proceeding." Plaintiff points to the definition of "public meeting in a quasi-judicial proceeding," which "includes any meeting established and held by a state or local governmental entity, including, without limitations, meetings or presentations before the state, city, town or village councils, planning commissions, review boards or commissions." Section 38-2-9.1(D). Plaintiff contends that "includes" is not a term of limitation, suggesting room for other types of meetings, including those associated with federal proceedings. *See United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 13, 148 N.M. 426, 237 P.3d 728 (noting "that the use of the word 'includes' to connect a general clause to a list of enumerated examples demonstrates a legislative intent to provide an incomplete list"). However, in this instance, the use of the term "includes" was intended to give an incomplete list of examples of "meeting[s] established and held by a state or local governmental entity," not a list of governmental entities before which meetings could be held. Thus, we find no error in the district court's conclusion that the definition of a "public meeting in a quasi-judicial proceeding" limits the applicability of the Anti-SLAPP statute "to speech made to a political subdivision of the state or local government."

**{20}** Plaintiff contends that the Anti-SLAPP statute "also protects speech made in connection with a 'public hearing,' a term which is not defined and not limited to state or local proceedings." Plaintiff urges us to interpret the term "public hearing" more expansively because it "suggests an inherently more formal proceeding" as opposed to the open-ended reference to a "public meeting." The Anti-SLAPP statute, however, makes no distinction between the level of formality of any particular proceeding. Nothing in the plain language of the Anti-SLAPP statute indicates that it is applicable to any proceedings other than those "before a tribunal or decision-making body of any political subdivision of the state," and we will not add terms that are not there. *See Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (concluding that courts "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written" (internal quotation marks and citation omitted)); *State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)).

**{21}** Our construction of Section 38-2-9.1 is consistent with the findings and purpose of the Anti-SLAPP statute, which explains "that it is the public policy of New Mexico to

protect the rights of its citizens to participate in quasi-judicial proceedings before *local and state government tribunals*." Section 38-2-9.2 (emphasis added). Had the Legislature saw fit to include federal proceedings, it was capable of including language to that effect. *See Pueblo of Picuris v. N.M. Energy, Mins. & Nat. Res. Dep't*, 2001-NMCA-084, ¶ 14, 131 N.M. 166, 33 P.3d 916 (explaining that "we assume that the [L]egislature used specific language for a reason"); *cf.* Md. Code Ann., MD. Cts. & Jud. Proc. § 5-807(c) (West 2010) ("A defendant in a SLAPP suit is not civilly liable for communicating with a *federal,* [*s*]*tate, or local government body* or the public at large[.]" (emphasis added)). *But see* Frederick M. Rowe & Leo M. Romero, *Resolving Land-Use Disputes by Intimidation: SLAPP Suits in New Mexico*, 32 N.M. L. Rev. 217, 236 (2002) ("The statute does not, however, define 'public hearing' and does not limit this setting to particular official tribunals.").

**{22}**    Plaintiff argues application of this construction would lead to an unjust result because it would permit parties such as Defendants to retaliate against those who participate in federal proceedings. To be sure, "if an adherence to the literal use of the [statute's] words lead to injustice, absurdity or contradiction, we will construe the statute according to its obvious spirit or reason." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 (alteration, internal quotation marks, and citation omitted). However, we cannot say that the Legislature's decision to provide procedural protections for conduct or speech made in connection with certain proceedings before "tribunal[s] or decision-making bod[ies] of any political subdivision of the state[,]" Section 38-2-9.1(A), and omit protections for participation in federal proceedings is unjust, absurd or contradictory, as the stated intent of the Anti-SLAPP statute is to protect citizens' participation rights "before local and state governmental tribunals," not federal proceedings. *See Helman*, 1994-NMSC-023, ¶ 22 (explaining that it is not the role of the judiciary to "second-guess the [L]egislature's selection from among competing policies").

**{23}**    In addition to the plain language of a statute, our review of legislative intent is informed by "the context in which [the statute] was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *State v. Off. of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 13, 285 P.3d 622 (internal quotation marks and citation omitted). We find nothing—nor does Plaintiff point us to anything—from the historical context in which the Anti-SLAPP statute was promulgated supporting the conclusion that the Legislature sought to protect participation in federal proceedings. Accordingly, we decline to depart from the plain language of the Anti-SLAPP statute. We conclude the Anti-SLAPP statute does not include within its protections conduct or speech undertaken or made in connection with a public hearing or public meeting in a quasi-judicial proceeding before a tribunal or decision-making body of the federal government. *See N.M. Petroleum Marketers Ass'n v. N.M. Env't Improvement Bd.*, 2007-NMCA-060, ¶ 11, 141 N.M. 678, 160 P.3d 587 (applying the plain meaning rule when the appellants fail to convince this Court that adherence to the literal meaning of the language employed by the Legislature would lead to an unjust, absurd, or contradictory result); *see also Maestas*, 2007-NMSC-001, ¶ 15 ("We may only add words to a statute where it is necessary to make the statute conform to the [L]egislature's clear intent, or to prevent the statute from being absurd."). Having

concluded the Anti-SLAPP statute does not protect participation in federal government proceedings, we determine the district court did not err in denying Plaintiff's special motion on this basis.

**{24}** We recognize that Plaintiff contends the conduct or speech at issue in the duty-of-loyalty counterclaim was not exclusively directed to the Department of Commerce but also to the Disciplinary Board of our New Mexico Supreme Court. Although Plaintiff acknowledges she failed to raise this factual assertion in the district court, she argues this Court should nevertheless address her argument as it raises issues involving "general public interest" and "fundamental rights of a party," i.e., the exercise of her constitutionally-protected speech rights without fear of reprisal. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)); *see also* Rule 12-321(B)(2)(a), (d) NMRA (providing the "general public interest" and "fundamental rights" exceptions to the preservation rule).

**{25}** We note that "[t]he primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791. Plaintiff's failure to raise this argument below deprived the district court of the opportunity to appropriately craft its order according to the purported factual basis of the duty-of-loyalty counterclaim, the Defendants of an opportunity to respond with factual and/or legal assertions based on that factual basis, and this Court of a sufficient record from which we could render an informed decision about whether the duty-of-loyalty counterclaim should have been dismissed under the Anti-SLAPP statute.

**{26}** Because our consideration of such unpreserved issues is subject to our discretion, we decline to address Plaintiff's argument on this basis. *See* Rule 12-321(B)(2) (explaining that our consideration of the exceptions found in Rule 12-321(B)(2) is discretionary). Having concluded that Defendants' counterclaims do not fall within the class of actions governed by the Anti-SLAPP statute, we need not proceed to a discussion of whether Plaintiff is entitled to the substantive protections under the *Noerr-Pennington* doctrine.[1]

### III. Rule 1-011 Sanctions

**{27}** Plaintiff also challenges the district court's denial of her request for sanctions against Defendants under Rule 1-011 based on Defendants' alleged "improper purpose and untrue and inconsistent statements underlying their claims against [Plaintiff.]" Plaintiff, however, fails to explain how this Court has appellate jurisdiction over the

---

[1]Our holding should not be construed to preclude the district court from addressing this issue on remand.

district court's non-final decision on her request for sanctions, particularly when the district court did not craft its order in conformity with NMSA 1978, Section 39-3-4(A) (1999) (providing that when the district court believes its interlocutory decision "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order or decision may materially advance the ultimate termination of the ligation, [the district court] shall so state in writing"). *See Capco Acquisub, Inc. v. Greka Energy Corp.*, 2007-NMCA-011, ¶ 17, 140 N.M. 920, 149 P.3d 1017 (recognizing "the general principle, known as the final judgment rule, that our appellate jurisdiction is limited to review of any final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights" (alteration, internal quotation marks, and citations omitted)); *see also Curry v. Great Nw. Inc.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). We therefore decline to review this argument at this time.

**CONCLUSION**

**{28}**   For the foregoing reasons, we affirm the district court's order to the extent it concludes that the Anti-SLAPP statute was inapplicable and dismiss Plaintiff's appeal as premature. We further decline to review its order to the extent it denies Plaintiff's request for sanctions and remand to the district court for further proceedings consistent with this opinion.

**{29}   IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**