# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2024-NMCA-009

Filing Date: November 20, 2023

No. A-1-CA-40013

JOHNNY RAUL VALENZUELA,

       Plaintiff-Appellee,

v.

MY WAY HOLDINGS, LLC, a Nevada
Limited Company dba SUNLAND
PARK RACETRACK and CASINO,
RICK BAUGH, JOHNNY P. LUNA,
MARTIN BUSTILLOS,

       Defendants-Appellants,

and

VIOLET SMITH, in her individual
capacity, THE NEW MEXICO RACING
COMMISSION; and ISMAEL TREJO,
EXECUTIVE DIRECTOR OF THE NEW
MEXICO RACING COMMISSION,
in his official capacity,

       Defendants.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Marci E. Beyer, District Court Judge**

Daniel A. Marquez
El Paso, TX

Gene N. Chavez
Albuquerque, NM

for Appellee

Jennings Haug
Keleher Mcleod LLP

Thomas C. Bird
Deron B. Knoner
Ryan M. Walters
Albuquerque, NM

for Appellants

**OPINION**

**MEDINA, Judge.**

**{1}**     In this case we interpret the scope of the jurisdiction granted to this Court by New Mexico's statute prohibiting strategic litigation against public participation (Anti-SLAPP statute) expedited appeal provision, NMSA 1978, § 38-2-9.1(C) (2001), as well as considering the statute's application under the circumstances. Appellants My Way Holdings, LLC, Rick Baugh, Johnny P. Luna, and Martin Bustillos appeal the district court's denial of their motion to dismiss Appellee Johnny Raul Valenzuela's complaint via special motion under the Anti-SLAPP statute, or in the alternative under Rule 1-012(B)(6) NMRA for failure to state a claim. In our calendar notice, this Court directed the parties to brief "whether the right to an expedited appeal described in . . . Section 38-2-9.1(C) . . . is applicable to the district court's denial of [Appellants'] request for dismissal pursuant to Rule 1-012(B)(6)."

**{2}**     We first hold that the expedited appeal under Section 38-2-9.1(C) applies only to the special motion raising speech-based affirmative defenses under the Anti-SLAPP statute and the *Noerr-Pennington* doctrine. Therefore, we lack jurisdiction to consider Appellants' alternative Rule 1-012(B)(6) arguments on expedited appeal. We next affirm the district court's denial of Appellants' special motion to dismiss.

**BACKGROUND**

**{3}**     We draw the following facts from Appellee's allegations set forth in the complaint. In 2017, Appellee was licensed by the New Mexico Racing Commission (NMRC) as a racehorse jockey. On January 15, 2017, Appellee was scheduled to jockey a racehorse at Sunland Park Racetrack. Prior to the race, Appellants conducted a compliance inspection and spot check of jockeys inside the changing room and in the hallway near the changing room. Appellants Luna and Bustillos, Sunland Park security personnel, claimed to have observed a prohibited electrical device in the hallway trash can after witnessing Appellee move towards it during the inspection, wrote reports about the incident, and provided the reports to the NMRC.[1] Before the NMRC board of stewards began disciplinary proceedings against Plaintiff for violations of the New Mexico Horse Racing Act, NMSA 1978, Sections 60-1A-1 to -30 (2007, amended through 2023), Appellants banned Appellee from the Sunland Park Racetrack. *See* 15.2.1.7(S)(11) NMAC (providing that the stewards are racing officials "with powers and duties specified

---

[1]NMRC regulatory rules prohibit electrical or mechanical devices designed to increase or retard the speed of a horse. 15.2.5.13(E)(6)(c) NMAC.

by" statute and the regulations); 15.2.1.9(B) NMAC (subjecting licensees to disciplinary proceedings conducted by the stewards).

{4}     The board of stewards summarily suspended Appellee from using his NMRC license and entering any property under the jurisdiction of the NMRC, including Sunland Park Racetrack. *See* 15.2.1.9(B)(3)(a) NMAC (authorizing the board of stewards to summarily suspend a person pending a hearing). The board of stewards held a disciplinary hearing at which Appellants Luna and Bustillos both testified about their discovery of a prohibited electrical device at the Sunland Park Racetrack on January 15, 2017. Following the hearing, the board of stewards suspended Appellee's NMRC license for five years and imposed a $5,000 fine.

{5}     Appellee appealed the board of stewards' decision to an administrative hearing officer under the NMRC, and an evidentiary hearing was held on January 30, 2018. *See* 15.2.1.9(B)(9)(a) NMAC (stating that a "person who has been aggrieved by a ruling of the stewards may appeal to the [NMRC]"). Appellants Luna, Bustillos, and Defendant Violet Smith, a member of the Sunland Park Racetrack board of stewards, testified at the evidentiary hearing. The hearing officer reversed the board of stewards' decision and dismissed the disciplinary action. The hearing officer cited to a lack of physical evidence purported to be in Appellee's possession as well as inconsistent testimony from Appellants Luna, Bustillos, and Defendant Smith and found that the NMRC board of stewards failed to meet its burden of proof to show by a preponderance of the evidence that Appellee possessed a prohibited electrical device.

{6}     Appellee sued Appellants for negligent misrepresentation, fraud, negligence, civil conspiracy, tortious interference with contract, prima facie tort, spoliation, and malicious abuse of process. Appellee also alleged that despite the dismissal of the disciplinary action, Appellants continued to ban Appellee from the Sunland Park property. Appellants filed a motion to dismiss all of Appellee's claims via special motion under the Anti-SLAPP statute, arguing that their participation and testimony at Appellee's disciplinary hearings was protected speech under two different theories of immunity—absolute immunity for testimony and qualified immunity for reporting—and under the *Noerr-Pennington* doctrine because Appellants exercised their right to petition a government agency. Appellants also argued in the alternative that Appellee's complaint generally failed to state a claim under Rule 1-012(B)(6) because Appellee could not prevail under any state of facts provable under the claim, or the claims were barred by the applicable statute of limitations.

{7}     The district court denied Appellants' motion, ruling that "the . . . Anti-SLAPP statute and the *Noerr-Pennington* doctrine [did] not apply" because Appellants' "alleged conduct, if true, [was] not conduct the Legislature intended the Anti-SLAPP statute to protect." Further, the district court stated if the allegations against Appellants "are found to be true, . . . [Appellants'] conduct would be considered to be a sham under the *Noerr-Pennington* test and the protections under the doctrine would also be waived." The district court also denied Appellants' alternative Rule 1-012(B)(6) motion, ruling that Appellee sufficiently pleaded causes of action such that he may be entitled to recover

from Appellants. Appellants appealed the district court's order that "the . . . Anti-SLAPP statute and the *Noerr-Pennington* doctrine [did] not apply" and the denial of Appellants' Rule 1-012(B)(6) motion, under the Anti-SLAPP statute's expedited appeal provision. *See* § 38-2-9.1(C) (authorizing an expedited appeal from an order ruling on a special motion under the statute); *Cordova v. Cline*, 2017-NMSC-020, ¶ 17, 396 P.3d 159 (concluding "that the Anti-SLAPP statute provides a right to an interlocutory appeal under the expedited appeal provision").

## DISCUSSION

**{8}** We begin our analysis with our review of Section 38-2-9.1(C), which provides for an expedited appeal. We hold that the Section 38-2-9.1(C) expedited appeal applies to the affirmative, speech-based defenses raised in a special motion under the Anti-SLAPP statute and not to all possible defenses raised by a defendant. After determining the scope of our review on appeal, we then turn to the merits of Appellants' special motion to dismiss. Under the facts of this case, we first hold that the Anti-SLAPP statute applies to Appellants' conduct at issue. We then determine whether Appellants' speech-based defenses bar Appellee's claims. Concluding that that they do not, we affirm the district court's denial of Appellants' special motion to dismiss. Although this is a close case under the heightened pleading standard, we hold that Appellee pleaded sufficient factual and legal information to prevent dismissal under the Anti-SLAPP statute.

## I.     Appellate Jurisdiction Under the Anti-SLAPP Statute's Expedited Appeal Provision

**{9}** We begin by addressing whether the expedited appeal provision in Section 38-2-9.1(C) extends to the defenses Appellants alternatively raised under Rule 1-012(B)(6). We do so because "[t]he question of jurisdiction is a controlling consideration that must be resolved before [proceeding] further." *State v. ex rel Bevacqua-Young v. Steele*, 2017-NMCA-081, ¶ 6, 406 P.3d 547 (internal quotation marks and citation omitted). "Whether a court has jurisdiction to hear a particular matter is a question of law that we review de novo." *Gzaskow v. Pub. Emps. Ret. Bd.*, 2017-NMCA-064, ¶ 22, 403 P.3d 694 (internal quotation marks and citation omitted). Our analysis also requires interpretation of Section 38-2-9.1, which we review de novo. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 10, 309 P.3d 1047.

**{10}** Appellee argues that Appellants' Rule 1-012(B)(6) defenses are not properly brought before this Court under the expedited appeal provision of Section 38-1-9.1(C) because a moving party is entitled to the procedural protections of the Anti-SLAPP statute only if they demonstrate they are the target of a SLAPP suit by special motion. The expedited appeal considers only that question. Appellants respond in part that the plain language of Section 38-1-9.1 does not create a "specific limitation on the type, nature, or number of defenses that a defendant may assert" under the Anti-SLAPP statute and permits various forms motions. Instead, Appellants suggest that "flexible consideration of any arguments properly raised by [A]ppellant[s]" is warranted based on persuasive federal authority. Because we limit our analysis to the language of Section

38-1-9.1 and the intent of our Anti-SLAPP statute, we do not address Appellants' policy arguments based on federal authority.

**{11}** After review of the Anti-SLAPP statute, our own case law, the principles of finality, and other jurisdictions' case law, we hold that Section 38-2.9.1(C)'s expedited appeal applies only to the speech-based defenses brought in a special motion under the statute. Therefore, we lack jurisdiction to reach the merits of other, nonspeech affirmative defenses raised by Appellants at the same time the Anti-SLAPP statute is invoked. We explain.

**{12}** Our Supreme Court addressed Section 38-2-9.1, in *Cordova*, and held that "Section 38-2-9.1(C) allows any party to bring an interlocutory appeal from a trial court order on the special motion(s) brought pursuant to [the] Anti-SLAPP statute." *Cordova*, 2017-NMSC-020, ¶ 12. The Supreme Court noted that the "plain language of Subsections A, B, and C of the Anti-SLAPP statute describe an expedited process that is necessarily interlocutory in nature." *Id.* ¶ 14, (internal quotation marks and citation omitted). However, the opinion in *Cordova* did not address the question presented here: whether the interlocutory appeal applies only to affirmative speech-based defenses under Section 38-2-9.1 or all possible defenses to a plaintiff's complaint.

**{13}** "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 16, 326 P.3d 1120 (internal quotation marks and citation omitted). "New Mexico courts have long honored this statutory command through application of the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (text only) (citation omitted). "The statute or statutes, whose construction is in question, are to be read in connection with other statutes concerning the same subject matter." *Wild Horse Observers Ass'n v. N.M. Livestock Bd.*, 2022-NMCA-061, ¶ 8, 519 P.3d 74 (internal quotation marks and citation omitted). "Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous, and we will not read into a statute language which is not there." *Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 (text only) (citations omitted).

**{14}** We begin with the applicable language of the Anti-SLAPP statute, which states in relevant part:

> A.    Any action seeking money damages against a person for conduct or speech undertaken or made in connection with a public hearing or public meeting in a quasi-judicial proceeding before a tribunal or decision-making body of any political subdivision of the state is subject to a special motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment that shall be considered by the court on a

priority or expedited basis to ensure the early consideration of the issues raised by the motion and to prevent the unnecessary expense of litigation.

      B.     If the rights afforded by this section are raised as an affirmative defense and if a court grants a motion to dismiss, a motion for judgment on the pleadings or a motion for summary judgment filed within ninety days of the filing of the moving party's answer, the court shall award reasonable attorney fees and costs incurred by the moving party in defending the action. If the court finds that a special motion to dismiss or motion for summary judgment is frivolous or solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney fees to the party prevailing on the motion.

      C.     Any party shall have the right to an expedited appeal from a trial court order on the special motions described in Subsection B of this section or from a trial court's failure to rule on the motion on an expedited basis.

Section 38-2-9.1(A)-(C).

**{15}** Reading Subsections (A), (B), and (C) together, the right to an expedited appeal applies to a "trial court['s] order on the special motions described in Subsection (B)," which is a motion where "the rights afforded by this section are raised as an affirmative defense" in response to "any action seeking money damages against a person for conduct or speech undertaken or made in connection with a public hearing or public meeting in a quasi-judicial proceeding." *Id.* The plain language of Section 38-2-9.1(C) ties the expedited appeal—one of the rights afforded by the statute—to the affirmative defenses referenced in Subsection (B): defenses against the allegations involving speech or conduct in Subsection (A). *See* NMSA 1978, § 38-2-9.2 (2001) (declaring the public policy of New Mexico to be protecting the rights of its citizens "to petition and to participate in quasi-judicial proceedings before governmental tribunals"). Nevertheless, while the limited scope of the Anti-SLAPP statute extends our jurisdiction on appeal only to those defenses that implicate the "rights afforded by this section," Section 38-2-9.1(B) does not explicitly define those rights. As a result, we agree with Appellants that the plain language of Section 38-2-9.1 alone, although it suggests a limit on what defenses may be raised, does not definitively impose such a limit.

**{16}** We therefore look to the object and purpose of the legislation in an effort to discern the Legislature's intent. *Ferebee v. Hume*, 2021-NMCA-012, ¶ 23, 485 P.3d 778 ("In addition to the plain language of the statute, our review of legislative intent is informed by the context in which the statute was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." (alteration, internal quotation marks, and citation omitted)). "The Legislature enacted the Anti-SLAPP statute with the policy goal of protecting its citizens from lawsuits in retaliation for exercising their right to petition and to participate in quasi-judicial proceedings." *Cordova*, 2017-NMSC-020, ¶ 19 (citing § 38-2-9.2 (stating the findings

and purpose of the Anti-SLAPP statute)). The Legislature passed the Anti-SLAPP statute with a "broad intent to protect citizens exercising their right to petition." *Cordova*, 2017-NMSC-020, ¶ 22 (citing § 38-2-9.2).

**{17}** To achieve this end, our Supreme Court has directed that "[r]ather than treating SLAPP suits as ordinary commercial or tort litigation, courts must identify the challenged activities of the target of the SLAPP suit in relation to their First Amendment protections." *Cordova*, 2017-NMSC-020, ¶ 18; *Ferebee*, 2021-NMCA-012, ¶ 14 ("As the Legislature makes clear, the Anti-SLAPP statute is intended to ensure that baseless lawsuits brought to chill persons from exercising the petition rights described therein, are promptly dismissed to prevent the abuse of the legal process and to protect persons exercising those rights from the burdens of such suits."). The language of Subsections (A), (B), and (C) thus reflects the Legislature's intent that the procedural protections of the Anti-SLAPP statute apply when a defendant has invoked speech-based defenses for speech or action connected to a quasi-judicial proceeding or a public hearing. Therefore, we conclude that the Legislature's grant of expedited appellate jurisdiction under Section 38-2-9.1(C) applies to speech-based defenses raised, and not to any other possible affirmative defense.

**{18}** Appellants contend that our Supreme Court's analysis in *Cordova* should result in a different conclusion than our analysis today. We disagree. As Appellants acknowledge, our Supreme Court did not address the issue before us in *Cordova*. Rather, Appellants argue that our Supreme Court's use of a Rule 1-012(B)(6) review framework implicitly allows review of Appellants' other Rule 1-012(B)(6) defenses. We disagree. As our Supreme Court stated, Section 38-2-9.1 provides procedural, not substantive protections. *See Cordova*, 2017-NMSC-020, ¶ 24. A defendant's special motion to dismiss is only one of the types of special motions allowed under the statute. Section 38-2-9.1(A), (B). Because the defendants in *Cordova* made a special motion to dismiss under Rule 1-012(B)(6), our Supreme Court reviewed under a Rule 1-012(B)(6) framework with the addition of a heightened pleading standard. *See Cordova*, 2017-NMSC-020, ¶¶ 7, 29. The adoption of this procedural mechanism does not suggest an expansion of the issues appellate courts will consider in an expedited appeal under Section 38-2-9.1(C).

**{19}** We find support for our conclusion in *Ferebee*. In *Ferebee*, the plaintiff filed a special motion to dismiss the defendants' counterclaims under the Anti-SLAPP statute, and additionally moved to dismiss the counterclaims under Rule 1-011(A) NMRA as a sanction. *Ferebee*, 2021-NMCA-012, ¶ 4. The district court denied both motions. *Id.* ¶ 5. On appeal, this Court affirmed the district court's denial of the special motion, holding that the defendants' actions did not fall under the "class of actions governed by the Anti-SLAPP statute." *Id.* ¶ 26. Without explicitly determining it was without appellate jurisdiction, this Court did not review the district court's denial of the plaintiff's motion under Rule 1-011. This Court reasoned that the plaintiff "fail[ed] to explain how this Court has appellate jurisdiction over the district court's non[]final decision on her request for sanctions, particularly when the district court did not craft its order in conformity with NMSA 1978, [Section] 39-3-4(A) (1999)." *Id.* ¶ 27

**{20}** Similarly, in *Chandler v. Advance New Mexico Now PAC*, the defendants filed a special motion to dismiss the plaintiff's defamation claims under the Anti-SLAPP statute. 2021-NMCA-017, ¶ 4, 488 P.3d 691. The district court denied the defendants' special motion. *Id.* ¶ 5. This Court affirmed the district court on appeal, concluding the "[d]efendants' conduct or speech was not undertaken or made in connection with a public hearing or public meeting." *Id.* ¶ 20 (alteration, internal quotation marks, and citation omitted). After determining that the Anti-SLAPP statute did not apply and our jurisdiction was limited to review of the Anti-SLAPP statute, this Court then held "we do not have jurisdiction to address the district court's ruling concerning the legal sufficiency of [the p]laintiff's defamation or other claims at this time." *Id.*

**{21}** Our principles of finality also support our conclusion. On appeal, we are generally limited to reviewing only any "final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights." NMSA 1978, § 39-3-2 (1966). "The general rule in New Mexico for determining the finality of a judgment is that an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Zuni Indian Tribe v. McKinley Cnty. Bd. of Cnty. Comm'rs*, 2013-NMCA-041, ¶ 16, 300 P.3d 133 (internal quotation marks and citation omitted). Our Anti-SLAPP statute provides a unique procedural mechanism for the Appellants to establish "immunity predicated on the First Amendment right to petition" that is separate from the underlying claims. *See Cordova*, 2017-NMSC-020, ¶ 25. As such, the expedited appeal provided by Section 38-2-9.1(C) creates a narrow exception to this principle of finality in order to timely address important First Amendment considerations. But outside the scope of the Anti-SLAPP statute, the district court has not yet determined any issue of law or fact that would dispose of the case to the fullest extent possible. If dismissal is not required by the special Anti-SLAPP defense, then remand to the district court is appropriate to allow the action to continue in the normal course until a final decision. *See Zuni Indian Tribe*, 2013-NMCA-041, ¶ 16.

**{22}** Finally, our conclusion is consistent with decisions of other jurisdictions with similar language in their own Anti-SLAPP statutes. For example, in determining how an Anti-SLAPP motion should be reviewed on appeal, the Supreme Judicial Court of Massachusetts declined to equate a special motion to dismiss, pursuant to the Massachusetts' Anti-SLAPP statute with a motion to dismiss on non-First Amendment issues, raised pursuant to the Massachusetts' equivalent to Rule 1-012(B)(6). *Town of Hanover v. New England Reg'l Couns. of Carpenters*, 6 N.E.3d 522, 530 n.11 (Mass. 2014). Similarly, the District of Columbia Court of Appeals noted that the denial of an Anti-SLAPP motion to dismiss is immediately appealable, but the denial of a motion to dismiss on other grounds, under the equivalent to Rule 1-012(B)(6), is not because it is nonfinal. *Am. Stud. Ass'n v. Bronner*, 259 A.3d 728, 734 n.8 (D.C. 2021). The Supreme Court of Connecticut held that the denial of an Anti-SLAPP special motion is immediately appealable because it is an "entirely independent" determination of a claim "of a right to avoid litigation" under the Connecticut Anti-SLAPP statute. *Smith v. Supple*, 293 A.3d 851, 866-71 (Conn. 2023). The Connecticut Supreme Court reviewed

multiple other jurisdictions applying a similar analysis, including New Mexico. *See id*. at 866 n.23.

**{23}** We therefore hold that the expedited appeal of Section 38-2-9.1(C) applies only to affirmative speech-based defenses for "conduct or speech undertaken or made in connection with a public hearing or public meeting in a quasi-judicial proceeding" under Section 38-2-9.1(A). Consequently, our appellate jurisdiction in this appeal is limited to the Anti-SLAPP special motion under Section 38-2-9.1(C). As such, our appellate jurisdiction does not extend to review Appellants' appeal from the district court's ruling on their alternative Rule 1-012(B)(6) motion to dismiss.

**{24}** Under the same reasoning outlined above, we also decline to review Appellants' claims that absolute immunity against defamation for testimony or the qualified immunity for government reporting precludes Appellee's claims. In the context of an Anti-SLAPP special motion, our Supreme Court has stated that "the *Noerr-Pennington* doctrine is the mechanism that offers [the defendants] the substantive First Amendment protections they seek" when moving to dismiss under Section 38.2.9.1 for petitioning the government. *Cordova*, 2017-NMSC-020, ¶ 24; *see also Hume*, 2021-NMCA-012, ¶ 26 (stating that if the Anti-SLAPP statute applies, then we determine if the party is entitled to the substantive protections under the *Noerr-Pennington* doctrine). The *Noerr-Pennington* doctrine was adopted to serve the same purposes as other speech based immunities, but is specifically tailored for the context of the Anti-SLAPP statute. *See Cordova*, 2017-NMSC-020, ¶ 24 ("Under the *Noerr-Pennington* doctrine, those who engage in conduct aimed at influencing the government, including litigation, are shielded from retaliation provided their conduct is not a sham."). Having determined the scope of our appellate jurisdiction in this case, we next address the district court's denial of Appellants' special motion to dismiss.

## II. The District Court's Denial of Appellants' Special Motion to Dismiss

**{25}** Appellants argue that the district court erred when denying their special motion to dismiss under the Anti-SLAPP statute. We begin with Appellants' argument that the district court erred by concluding Section 38-2-9.1(A) did not apply to Appellants' conduct.

**{26}** Appellants argue that the district court erred as a matter of law because it failed to identify the challenged activities and the applicable First Amendment protections at issue as required under *Cordova*, 2017-NMSC-020, ¶ 21, and instead determined the strength of the speech-based defenses before determining if Section 38-2-9.1 applied. Appellants' argument requires that we again interpret Section 38-2-9.1, which we review de novo. *Hedstrom*, 2013-NMSC-043, ¶ 10. We agree with Appellants that, under the facts and procedural posture of the case, Section 38-2-9.1 applies to their conduct and explain.

**{27}** In interpreting Section 38-2-9.1 and the paired Section 38-2-9.2, our Supreme Court concluded that the "Legislature enacted the Anti-SLAPP statute with the policy

goal of protecting its citizens from lawsuits in retaliation for exercising their right to petition and to participate in quasi-judicial proceedings" and "intended to protect all public participation." *Cordova*, 2017-NMSC-020, ¶ 19. As such, "the phrase 'in connection with' in Section 38-2-9.1(A) reveals the Legislature's intent to protect all activities related to the public hearing before a tribunal." *Id.* ¶ 21; *see* § 38-2-9.1(A) (protecting from actions seeking money damages conduct or speech "made in connection with a public hearing or public meeting in a quasi-judicial proceeding"). Therefore, "a narrow interpretation of the language of the Anti-SLAPP statute is contrary to the Legislature's broad intent to protect citizens exercising their right to petition." *Cordova*, 2017-NMSC-020, ¶ 22 (citing § 38-2-9.2).

**{28}** Under this broad interpretation of Section 38-2-9.1, Appellants properly invoked the protections of the Anti-SLAPP statute. Appellee's complaint and various causes of action seek money damages for Appellants' alleged negligent or fraudulent reporting to a public agency and their subsequent testimony and presentation of evidence to a quasi-judicial tribunal. The disciplinary proceedings were quasi-judicial in nature because they determined whether Appellee's license should be revoked after a presentation of evidence. *See Benavidez v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 2021-NMCA-029, ¶ 18, 493 P.3d 1024 (defining a quasi-judicial action as "involving a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question" (internal quotation marks and citation omitted)). Therefore, Appellants' conduct was "in connection with" a quasi-judicial proceeding, and protected by Section 38-2-9.1. *See Cordova*, 2017-NMSC-020, ¶ 21 (internal quotation marks omitted).

**{29}** Appellee does not dispute that the Anti-SLAPP statute applies under the statutory language. Instead, Appellee argues that the statute does not apply because it does not protect individuals who have made false reports. Although Appellee's allegations are relevant to determine if a special motion under the statute should be granted on its merits under the *Noerr-Pennington* doctrine, they are not relevant to determining if the Anti-SLAPP statute applies. Here, because Appellants fulfill the statutory requirements of Section 38-2-9.1(A), and the parties do not dispute its application, we hold that Appellants properly filed a special motion to dismiss under the Anti-SLAPP statute.

**{30}** We next briefly address Appellants' argument that the district court misinterpreted Section 38-2-9.1(E) when it determined the subsection applies to both parties and not just the moving party under the Anti-SLAPP statute. Section 38-2-9.1(E) states, "Nothing in this section limits or prohibits the exercise of a right or remedy of a party granted pursuant to another constitutional, statutory, common law or administrative provision, including civil actions for defamation or malicious abuse of process." Under the plain language, Section 38-2-9.1(E) applies to both parties, not just a defendant to a SLAPP suit. *See id.* (stating the subsection applies to *a party* when the statute is invoked (emphasis added)). To apply Section 38-2-9.1(E) only to Appellants

would require that we read language into the statute, which we will not do. *See City of Albuquerque*, 2013-NMCA-063, ¶ 5. Instead, reading Subsection E with the remainder of the statute, clarifies that the Anti-SLAPP statute provides additional protection to targets of SLAPP suits but is not an absolute bar to lawsuits involving possibly protected speech. *See Nat'l Educ. Ass'n of N.M. v. Santa Fe Pub. Schs.*, 2016-NMCA-009, ¶ 6, 365 P.3d 1 ("All parts of a statute must be read together to accurately reflect legislative intent, and courts must read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." (internal quotation marks and citation omitted)).

**{31}** In conclusion, we hold that under the facts and procedural posture of this case, the district court erred when ruling that the Anti-SLAPP statute did not apply to Appellants, and that Appellants could not bring a special motion to dismiss under the statute. Because we determine Appellants properly invoked Section 38-2-9.1, we next address Appellants' speech-based defenses to Appellee's complaint.

### A.    *Noerr-Pennington* Doctrine Analysis

**{32}** We now turn to Appellants' argument that the district court erred by concluding that the *Noerr-Pennington* doctrine did not bar Appellee's complaint. Our Supreme Court adopted the *Noerr-Pennington* doctrine as the mechanism that offers defendants the "substantive First Amendment protections" they seek under Section 38-2-9.1. *Cordova*, 2017-NMSC-020, ¶ 24. "The *Noerr-Pennington* doctrine is a body of federal law that provides First Amendment protections for citizens who petition the government" and shields them from retaliation for "conduct aimed at influencing the government." *Id.* Although the *Noerr-Pennington* doctrine emerged from antitrust litigation, the doctrine "is rooted in the First Amendment right to petition and therefore must be applied to all claims implicating that right, not just to antitrust claims." *Id.* ¶¶ 25-26 (internal quotation marks and citation omitted); *see id.* (discussing the origination of the *Noerr-Pennington* doctrine and its current application to First Amendment cases).

**{33}** However, the "*Noerr-Pennington* doctrine protections are not absolute. To be entitled to First Amendment protection under the *Noerr-Pennington* doctrine, the activity must be genuine and not a mere sham." *Id.* ¶ 27 (citation omitted). This is because a sham petition "lacking a genuine, legitimate purpose of procuring favorable governmental action are not protected by the First Amendment." *Id.*

**{34}** Our Supreme Court provided the analytical framework for our analysis on appeal. "To constitute a sham, the petitioning activities must meet a two-part test. First, the petitioning activities must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* ¶ 28 (internal quotation marks and citation omitted). A reviewing court proceeds to the second step only if the petitioning activities are objectively baseless. *Id.* Second, the reviewing court must determine "whether the subjective motivation underlying the challenged conduct was improper." *Id.* In other words, Appellee must have pleaded facts to establish that (1) Appellants' report initiating disciplinary proceedings and testimony at the proceedings

was objectively baseless in that it did not have sufficient factual or legal support; and (2) Appellants' primary purpose was to effectuate an improper objective. *See id.* (explaining the sham test in practice).

**{35}**  "We review the denial of a motion to dismiss de novo because such a motion tests the legal sufficiency of the allegations." *Padilla v. Wall Colmonoy Corp.*, 2006-NMCA-137, ¶ 7, 140 N.M. 630, 145 P.3d 110. In reviewing the district court's decision, "we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 (internal quotation marks and citation omitted). For cases involving conduct arguably protected by the First Amendment and special motions brought under Section 38-2-9.1, our Supreme Court adopted a higher pleading standard. *Cordova*, 2017-NMSC-020, ¶¶ 29-30 (discussing the higher pleading standard and its adoption in New Mexico). "This higher standard of pleading requires more than conclusory allegations in the complaint." *Id.* ¶ 30. Instead, a plaintiff must plead claims "with sufficient factual and legal specificity to establish that the . . . activities were a sham to overcome both the *Noerr-Pennington* doctrine and the affirmative defense under the Anti-SLAPP statute." *Id.* We therefore turn to consider the specific facts Appellee alleged in the complaint.

**{36}**  Appellee alleged that Appellants Luna and Bustillos claimed to have observed Appellee move towards a trash can located near the jockey's changing room and claimed to have observed a prohibited electrical device in the trash can after Appellee was inspected, searched, and allowed to leave during a routine inspection of jockeys on January 15, 2017. Appellant Bustillos also claimed that he took a color photo of the device. Both Appellants Luna and Bustillos wrote incident reports regarding the alleged prohibited device, which were provided to NMRC officials who in turn initiated disciplinary proceedings against Appellee. The board of stewards ruled against Appellee, suspending his NMRC license for five years, issued a $5,000 fine and banned him from entering any grounds under the NMRC's jurisdiction on April 9, 2017.

**{37}**  Appellee appealed the board of steward's decision to suspend his license and ban him from NMRC premises. The hearing officer found that Appellants Luna's and Bustillos's testimony was inconsistent with each other about the placement of the trash can, where the jockeys were located during the search, and the timeline of events. Appellant Bustillos was also inconsistent within his own testimony about events. The electrical device reportedly found was never introduced into evidence, the device was never provided to Appellee or his counsel for inspection, and no witness could explain what happened to the electrical device. From January 15, 2017, to today, despite the dismissal of the allegations against Appellee, Appellants continue to exclude Appellee from Sunland Park Racetrack.

**{38}**  Appellee contends that the Appellants either negligently or fraudulently misrepresented information to represent (1) Appellee possessed a prohibited electrical device; (2) Appellee was seen discarding the electrical device; and (3) the electrical device was discovered in the trash can. As a result, Appellants deceived Sunland Park

personnel and the board of stewards to obtain a baseless decision that Appellee possessed an electrical device, and then participated in the issuance of a formal ruling against Appellee that he possessed a prohibited electrical device. Appellee alleges that Sunland Park is vicariously liable for their employees' conduct, and further contends that Sunland Park failed to properly train its employees, making Sunland Park directly liable for the employees' negligent or fraudulent misrepresentations.

**{39}**　Appellee also contends that Appellants conspired with NMRC officials to pursue and participate in the disciplinary action against Appellee even though the testimony and reports were false and without physical evidence, and continue to participate in Appellee's exclusion from Sunland Park Racetrack to Appellee's detriment. Appellee alleges that this interfered with Appellee's contractual obligations as a racehorse jockey with third parties. Appellee, to support spoliation of evidence, states that Appellants were aware that their actions could create liability and result in a potential lawsuit from Appellee, and Appellants intended to disrupt Appellee's lawsuit by destroying the potential physical evidence relevant to the suit—the electrical device, the colored photographs, and the camera used to take the photos. Finally, to support a claim for prima facie tort, Appellee argues that, even if the actions were lawful, Appellants acted with the intent to injure Appellee; that Appellants acted without justification or with insufficient justification; and Appellants intentionally misused the disciplinary proceeding to accomplish an illegitimate end.

**{40}**　With our analytical framework and the facts as alleged by Appellee established, we now turn to the parties' arguments on appeal. Appellants argue they had no control over the board of stewards or the NMRC when initiating disciplinary proceedings, and the board of stewards believed there were sufficient facts to go forward. Appellants claim they cannot be held responsible for government action or the government's failure to meet its burden of proof. Additionally, Appellants argue they were required to report to the NMRC. Further, Appellants argue that the sham exception does not look at the ultimate success of the government action, but instead only at the intention to influence government action. Finally, Appellants argue that Appellee's argument focuses too much on Appellants' subjective intent and that Appellee cannot show the first step to the sham exception—that Appellants' actions were objectively baseless.

**{41}**　In response, Appellee argues Appellants' characterization of themselves as passive participants is inaccurate when looking at Appellee's complaint and the additional actions taken by Appellants alleged within. We also understand Appellee to argue that Appellants petitioned the NMRC to punish Appellee, even though the overall outcome of the proceedings was irrelevant to Appellants. Finally, even under the heightened pleading standard, Appellee maintains he pleaded sufficient facts to show Appellants' conduct was a sham.

**{42}**　We hold Appellee pleaded sufficient facts to establish both elements of the sham exception. As such, we affirm the district court's denial of Appellants' special motion to dismiss. We explain.

**{43}** Taking Appellee's allegations as true, Appellants' incident report and participation in the disciplinary proceedings against Appellee were objectively baseless. Appellants either negligently or fraudulently misrepresented the events of Appellee's inspection and search to the NMRC. At the same time, Appellants actively communicated with the NMRC to pursue the disciplinary action, as well as voluntarily testifying at both the evidentiary hearing before the board of stewards and the administrative hearing officer on appeal. Finally, Appellants destroyed or failed to produce all potential physical evidence from the alleged incident—the electrical device itself, the color photographs, and the camera used to take the photos apparently in order to avoid undermining their false testimony.

**{44}** Based on these alleged facts, Appellants had insufficient legal or factual support to file an incident report against Appellee to the NMRC or testify to the same facts. Rather, according to Appellee's allegations, there was no factual support at all. *See Cordova*, 2017-NMSC-020, ¶ 28 (providing that a petition is "objectively baseless in that it did not have sufficient factual or legal support"). Therefore, Appellants' actions were objectively baseless. *Cf. id.* ¶ 35 (holding that the defendants conduct was objectively baseless because they filed the petition without verification of the truth and accuracy of the events described, and therefore no reasonable litigant could realistically expect success on the merits). Because Appellee sufficiently pleaded that Appellants' actions were objectively baseless, we continue to the next step of our analysis—whether Appellee pleaded that Appellants' primary purpose was improper.

**{45}** Again taking Appellee's allegations as true, Appellants had an improper motivation. Appellants acted with intent to injure Appellee and intentionally misused the disciplinary proceeding to accomplish their goal. Appellants' pursuit of the disciplinary action interfered with Appellee's contractual obligations as a racehorse jockey. Finally, Appellants used the report and disciplinary hearing as justification for banning Appellee from their property, and that ban remains in place even though the administrative hearing officer has since dismissed the allegations against Appellee.

**{46}** We conclude that Appellee has sufficiently pleaded that Appellants' motivations were improper. Unlike the plaintiff in *Cordova*, Appellee here has more than pleaded an improper motive. *See id.* ¶ 38 ("From the face of [the plaintiff]'s complaint, we cannot decipher precisely how [the d]efendants' motivations, even if political, make them improper."). Appellee has provided specific allegations—Appellants' continued ban on Appellee entering their property as a jockey or private citizen—to support his claim of improper motivation. *See id.* ¶ 39 ("In this case, [the plaintiff]'s complaint lacks the factual specificity necessary to establish an improper subjective motivation."). Appellee identified multiple specific misrepresentations, including that Appellee possessed and discarded a prohibited electrical device, and alleged that Appellants knew or should have known the allegations were false but nevertheless continued to pursue proceedings.

**{47}** Therefore the allegations in the complaint are sufficient under our heightened pleading standard to establish the sham exception to the *Noerr-Pennington* doctrine.

*See id.* ¶ 38 (stating that "the complaint must include allegations of the specific activities which demonstrate that the petitioning activity falls within the sham exception" (internal quotation marks and citation omitted)). As such, Appellants' actions are not protected by the First Amendment right to petition. Accordingly, we affirm the district court's denial of Appellants' special motion to dismiss under Section 38-2-9.1.

**CONCLUSION**

**{48}** For the foregoing reasons, we affirm the district court's denial of Appellants' special motion to dismiss under the Anti-SLAPP statute, Section 38-2-9.1.

**{49} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**KATHERINE A. WRAY, Judge**